```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION


Kristin Kiser, et al.,          :

        Plaintiffs,              :

   v.                            :         Case No. 2:14-cv-2313

                                 :         JUDGE GREGORY L. FROST
Kurt Olsen,                                Magistrate Judge Kemp

        Defendant.               :
```

                    REPORT AND RECOMMENDATION

                    I.  Introduction

   This case involves a trust created in 2000.  Plaintiffs claim that after the trust was created, the grantor, Ann L. Olsen, bought a farm in Athens County, Ohio, which she transferred into the trust and which was then managed in part by Plaintiff William Kiser.  Ms. Olsen (the mother of both Plaintiff Kristin Kiser and Defendant Kurt Olsen) allegedly represented that Kristin Kiser would end up with the farm and that Kurt Olsen would get other trust assets as compensation.  However, Plaintiffs assert that Kurt, who is a co-trustee of the trust (along with Kristin), has refused to go along with that understanding and has attempted to force a sale of the farm or to claim an interest in it.  Plaintiffs seek, among other things, declaration of a constructive trust for their benefit regarding the farm property.

   The case was originally filed in the Court of Common Pleas of Athens County, Ohio, Probate Division.  Kurt Olsen removed it on grounds of diversity of citizenship, see 28 U.S.C. §§1332(a), 1441(a).  Plaintiffs then moved to remand, contending that although the parties are from different states and the amount in controversy satisfies the jurisdictional requirement, the "probate exception" to diversity jurisdiction prevents the Court

from hearing the case. The motion has been referred to the Magistrate Judge for a report and recommendation and it is fully briefed. For the following reasons, it will be recommended that the motion to remand be denied.

## II. The Probate Exception

The diversity statute, 28 U.S.C. §1332, makes no mention, positively or negatively, of probate matters. As the Supreme Court has observed, however,

> It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789, 1 Stat. 73, and §24(1) of the Judicial Code, which is that of the English Court of Chancery in 1789, did not extend to probate matters.

Markham v. Allen, 326 U.S. 490, 494 (1946). Clear as that statement may seem, there has been much litigation over what constitutes a "probate matter," not to mention significant academic debate over the exception itself. See, e.g., "Symposium: The Role of Federal Law in Private Wealth Transfer: In Search of the Probate Exception," 67 Vand.L.Rev. 1533, 1534 (Nov. 2014)("Among the enigmas of federal jurisdiction, the probate exception surely ranks with the most arcane"); John F. Winkler, "The Probate Jurisdiction of the Federal Courts," 14 Prob. L.J. 77, 78 (1997)("The existence of a 'probate exception' to federal jurisdiction is a myth of federal law. Actions to obtain decedents' property or damages in lieu of such property should not be subject to any special principles of federal jurisdiction").

Markham itself attempted to draw a line between garden-variety suits which happened to be brought by people having some connection with a probate matter - creditors, heirs, legatees, and other claimants against an estate - and suits which asked a federal court to "interfere with the probate proceedings or

assume general jurisdiction of the probate or control of the property in the custody of the state court." Id. According to the Court, only the latter fall outside the grant of diversity jurisdiction in §1332(a). That delineation has been of limited assistance in separating out true "probate matters" from litigation which merely bumps up against, but does not improperly intrude into, the administration of decedents' estates. More recently, the Supreme Court had an opportunity to comment on and clarify the doctrine in Marshall v. Marshall, 547 U.S. 293 (2006), and the Court will examine that case in some detail.

Connoisseurs of popular culture are already familiar with the basic facts of Marshall v. Marshall. The case involved the marriage of Vickie Lynn Marshall, also known as Anna Nicole Smith, to a wealthy but elderly gentleman, J. Howard Marshall, who died a little over a year after the wedding. Mr. Marshall's will left his widow nothing, but she claimed that he had intended to create a trust containing significant assets to provide for her. She and the beneficiary of J. Howard Marshall's estate, E. Pierce Marshall (the elder Mr. Marshall's son), sued and countersued. One of Ms. Marshall's claims was that Pierce Marshall had tortiously interfered with her expectancy of a gift by imprisoning his father and transferring assets against his father's wishes. That claim was asserted in bankruptcy court (Ms. Marshall had filed for bankruptcy protection) while probate proceedings were ongoing in a Texas state court, and was litigated to conclusion, producing a substantial verdict in Ms. Marshall's favor. On appeal, Pierce Marshall argued (successfully) to the Court of Appeals for the Ninth Circuit that the probate exception deprived the bankruptcy court (and the district court, which adopted the bankruptcy court's decision) of jurisdiction over Ms. Marshall's claims.

The Supreme Court reversed. After noting that Markham had

used "enigmatic words" (those quoted above) in its description of the probate exception, especially concerning actions which might "interfere" with the administration of an estate, the Supreme Court attempted a more precise definition, stated this way:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Marshall, 547 U.S. at 311-12.  Because the claims asserted by Ms. Marshall did not involve the administration of an estate or the probate or annulment of a will, and because she had not asked the federal courts to assume *in rem* jurisdiction over any property already being administered by the state probate court, the probate exception did not apply.  The Court expressly criticized what it viewed as the Court of Appeals' "sweeping extension of the probate exception," implying that the exception is a narrow one to be narrowly construed.  Id. at 299.  (Justice Stevens, in a brief concurring opinion, said he did not believe in either the existence or utility of a "probate exception," expressing his views with this statement: "I would provide the creature with a decent burial...."  Id. at 318 (Stevens, J., concurring)).

The Court of Appeals for this circuit has not had many occasions to discuss the probate exception since Marshall was handed down.  It declined to apply the exception in Nahabedian v. OneWest Band, FSB, 556 Fed. Appx. 389 (6th Cir. Jan. 29, 2014), rejecting a claim that certain foreclosed property was being administered in a state court probate proceeding; there, the decedent had, by operation of Michigan law, lost his title to and interest in the property before the probate matter was opened.  In contrast, in Wisecarver v. Moore, 489 F.3d 747 (6th Cir.

2007), the court applied the probate exception, finding that a federal court had no power grant relief in the form of an order enjoining parties from disposing of assets they had received from a decedent's estate, divesting those same parties of their interest in that property and vesting it in parties who claimed to be the proper beneficiaries of the estate, and declaring a probated will to be invalid. "Granting this relief," the court said, "is precisely what the probate exception prohibits because it would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets." Wisecarver, 489 F.3d at 751. This Court has applied the exception in a case where a plaintiff sought to annul a will and to be awarded damages equal to the proceeds which the defendants received from the estate. Webb v. Howerton, 2013 WL 2096650 (S.D. Ohio May 14, 2013), adopted and affirmed 2013 WL 3279714 (S.D. Ohio June 27, 2013).

### III. Discussion

Plaintiffs make the following case for the application of the probate exception. The relief they seek is a declaration that they are the owners (or at least the constructive owners) of farm property located on Haw Road near New Marshfield, Ohio. Taking as true the allegations in the complaint, title to the property was vested in the Ann L. Olsen Trust by deed from Ann L. Olsen, and title still resides there. It appears to be Plaintiffs' theory that, because of the statements made by Ann L. Olsen during her lifetime upon which the Plaintiffs allegedly relied, the Trust should now deed the farm property to them, and Kurt Olsen should not be allowed, as a co-trustee, to exercise any power over the disposition of that property (other than, perhaps, to sign the deed). The trust document, however, appears to provide that an equal distribution of the trust assets would be made to Kristin and Kurt upon Ann's death. Plaintiffs

describe that language as a "testamentary provision" and contend that because their complaint asks a court to invalidate that provision, it is a probate matter.

In response, Kurt disputes the basic premises of this argument. First, he notes that the trust is an *inter vivos* trust, and that even though it survived the death of the grantor, it cannot property be viewed as a testamentary trust. That alone would defeat application of the probate exception. Additionally, Kurt points out that the trust property is not currently in the custody of the state probate court, so the concern about interfering with the *in rem* jurisdiction of another court is not present here. In their reply, Plaintiffs point to a split of authority on the question of whether *inter vivos* trusts which have a testamentary aspect - that is, they provide for the distribution of property after the death of the grantor - are covered by the probate exception. They argue that if the exception does not preclude litigation over the validity of this type of instrument, federal courts will become embroiled in disputes about the disposition of a decedent's property any time that occurs pursuant to a trust rather than a will, and that the purpose behind the probate exception militates against that outcome. Since they do not argue that a state court is exercising *in rem* jurisdiction over the trust property, the case comes down to this: would a decision on the Plaintiffs' claim be tantamount to the annulment of a will, even though the property in question never vested in Ann L. Olsen's estate (and Plaintiffs concede that she had made a will which was admitted to probate). For the following reasons, the Court hold that it would not.

It is true that, pre-<u>Marshall</u>, the Sixth Circuit Court of Appeals had referred approvingly to the concept that the probate exception applied to "trusts that act as will substitutes ...." <u>See Evans v. Pearson Enterprises, Inc.</u>, 434 F.3d 839, 849 (6th

cir. 2006)(a case in which the court declined to find the probate exception applicable because the trust at issue was not a will substitute). However, it is not at all clear that it would do the same today. That application of the probate exception was not universal, and, as one court has said, "[a] close reading of Marshall arguably suggests that the Supreme Court has swept aside this split of authority by providing a sharper and clearer definition of the exception and its boundaries." Oliver v. Hines, 943 F.Supp.2d 634, 637-38 (E.D. Va. 2013). Oliver recognized that some courts had applied the probate exception to *inter vivos* trusts even after Marshall was decided, but criticized them as not "adequately address[ing] the import of Marshall." Id. at 638 n.11. Oliver cited with approval the decision in Curtis v. Brunsting, 704 F.3d 406 (5th Cir. 2013), which, recognizing that the thrust of Marshall was to confine the probate exception to actual probate matters, held the exception inapplicable to a case involving trust property which never became part of a decedent's estate, and thus never fell within the custody of a probate court.

    Some courts have argued, however, that refusing to apply the exception to *inter vivos* trusts which are the functional equivalent of wills is inconsistent with various policies underlying the exception, including relegating such matters to courts with special expertise. For example, in Storm v. Storm, 328 F.3d 941, 947 (7th Cir. 2003), the court said that "[g]iven the growth in recent years of various 'will substitutes,' we are loath to throw open the doors of the federal courts to disputes over testamentary intent simply because a decedent chose to use a will substitute rather than a traditional will to dispose of his or her estate." But that case was implicitly criticized by Marshall as being an improper expansion of the scope of the probate exception. Marshall, supra, at 311.

Plaintiffs cite Chabot v. Chabot, 2011 WL 5520927 (D. Idaho Nov. 14, 2011), as an example of a post-Marshall case applying the probate exception to an *inter vivos* trust.  That trust, like the one in this case, contained provisions directing the distribution of the trust property upon the death of the settlors.  Chabot concluded that "Marshall implicitly held that the probate exception analysis applies to trusts that act as will substitutes," a holding which, in its view, "makes sense, given that Americans increasingly use trusts to transfer their wealth rather than wills."  Id. at *4.  As support, the Chabot court noted that Marshall did not directly address this issue and that the result was a sensible one because "[w]hatever the origins of the probate exception, it is ultimately practical."  Id.  At least one other court has followed Chabot.  Vaughn v. Montague, 924 F.Supp.2d 1256, (W.D. Wash. Feb. 14, 2013).

For several reasons, this Court is not persuaded by Chabot's resolution of the issue.  If practicality were the touchstone of jurisdictional analyses, factors such as the relative workloads of the state and federal courts might come into play - but the Supreme Court has expressly held that those considerations do not impact jurisdiction.  See Thermtron Products v. Hermansdorfer, 423 U.S. 336 (1976).  Chabot also mentions, but does not adequately account for, the Marshall court's express intent to narrow the scope of the probate exception.  Marshall seemed particularly concerned with the possibility that, by exercising diversity jurisdiction over a matter related to a decedent's estate which was already in probate, the federal court would be interfering with property already subject to the jurisdiction of another court.  The administration or execution of the terms of an *inter vivos* trust does not create that problem because the trust property is not being administered or distributed through proceedings in a state probate court; as Curtis v. Brunsting

-8-

correctly recognized, the property never was, nor could it ever become, part of the decedent's estate.

Finally, Plaintiffs have made no showing that the underlying premise of the probate exception described in Marshall - namely, that it exists because it was understood in 1789 that suits in law and equity did not encompass proceedings committed exclusively to the ecclesiastical courts of England - applies to *inter vivos* trusts.  Were disputes among beneficiaries of such a trust, even one which includes testamentary language, solely for the ecclesiastical courts to decide?  Perhaps if there were some evidence in this record to that effect, the result might be different, although, given Marshall's focus on the two analytical concerns which define the exception - lack of federal court jurisdiction to admit a will to probate and administer an estate, and the prevention of interference with property already being administered by a probate court - that seems unlikely.  But there is no such evidence here.

One final factor suggests that even if the probate exception had some application to *inter vivos* trusts, it should not apply here.  Apparently, based on the parties' filings, there is also an estate for Ann Olsen.  Consequently, is hard to argue that the trust at issue here is a real "will substitute."  Had Ms. Olsen wanted to commit all of her property to her estate, she had the ability and capacity to do so.  As the Oliver v. Hines court observed, "the argument that a trust is the functional equivalent of a will for jurisdictional purposes loses considerable force where, as here, the decedent had a successfully probated will in addition to an *inter vivos* trust."  Oliver, 943 F.Supp.2d at 639 n.17.  For all of these reasons, the Court concludes that the probate exception does not apply, and that it is proper for the Court to exercise jurisdiction over this case.  That validates the removal and requires denial of the motion to remand.

IV. Recommended Order

For the reasons set forth above, it is recommended that Plaintiffs' motion (Doc. 8) to remand be denied.

V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge